## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD DWAYNE NORRIS,** ) | |
| ***BOP Prisoner No. 17815-003**,* ) | |
| **Movant,** ) | |
| ) | **CIVIL ACTION NO. 1:21-00268-JB-N** |
| **v.** ) | |
| )**CRIMINAL ACTION NO. 1:19-00281-JB-N** | |
| **UNITED STATES OF AMERICA,** ) | |
| **Respondent.** ) | |

### REPORT AND RECOMMENDATION

Richard Dwayne Norris, a federal prisoner proceeding without counsel (*pro se*), filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on June 1, 2021 (Doc. 45)[1] challenging the judgment entered against him in the above-noted criminal action. With the Court's leave (*see* Doc. 64), Norris subsequently filed an amended § 2255 motion dated October 12, 2023 (Doc. 65). The motion and amended motion were both referred to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (6/4/2021 & 10/16/2023 electronic reference notations). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules

---

[1] All "Doc." citations herein refer to the docket of the above-numbered criminal action. The companion civil action has been opened for administrative and statistical purposes only, and does not contain any filings.

Governing Section 2255 Proceedings for the United States District Courts (hereinafter, "the § 2255 Rules").

Upon due consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Norris's claims be denied without an evidentiary hearing, except for the distinct claim that Norris's plea counsel provided constitutionally ineffective assistance by not advising him of a Fourth Amendment defense and filing a motion to suppress. Having appointed counsel for Norris and held an evidentiary hearing on that claim, the undersigned also **RECOMMENDS** that this claim also be denied, and that Norris's operative § 2255 motion be **DISMISSED with prejudice**.

## I.   Factual Background and Procedural History

### A.   <u>The Indictment</u>

In November 2019, a grand jury indicted Norris on one count of possession with intent to distribute 50 grams or more of a Schedule II controlled substance (methamphetamine (actual)), in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 1). Law enforcement arrested Norris on December 3, 2019. (Doc. 4). That same day, the Court arraigned Norris on the indictment and appointed Assistant Federal Defender Latisha Colvin to represent him. (*See* Docs. 7, 8, 9).

### B.   <u>The Plea Agreement</u>

On January 10, 2020, Norris filed a notice indicating his intent to plead guilty to both charges of the indictment (Doc. 13), along with a signed plea agreement (Doc.

14). Under the terms of the agreement, Norris unambiguously admitted his guilt of the charged offenses, surrendered his right to a trial by jury, and broadly waived his right to file any direct appeal or any collateral attack, including any § 2255 motions, except under limited circumstances. (Doc. 14). In exchange for Norris's guilty plea, the Government agreed not to bring any additional charges against Norris related to the facts underlying the charges in his indictment and to recommend to the Court that Norris be sentenced at the low end of the advisory sentencing guideline range. (Doc. 14).

By signing the plea agreement, Norris also stipulated that the accompanying factual resume—which summarized the evidence the Government intended to prove at trial—was "true and correct" (Doc. 14, PageID.37). According to the factual resume,

> A traffic stop in Baldwin County, Alabama on September 16, 2019, resulted in the seizure of methamphetamine (actual) and a firearm. Gulf Shores Police Department (GSPD) Officer Childress conducted the traffic stop and approached the stopped vehicle to identify the occupants. During his encounter with **NORRIS**, who was the driver, Officer Childress observed suspicious behavior. Officer Childress recognized **NORRIS** from an incident in August 2019, where **NORRIS** had been evicted from his residence and the property owner discovered narcotics paraphernalia inside the residence.
>
> Officer Childress informed **NORRIS** that a K-9 unit was on its way to check his vehicle for narcotics. Officer Childress told **NORRIS** that he and his passenger were free to leave the scene, however, the vehicle was being detained for the K-9 sniff. **NORRIS** stated that he would like to wait with his vehicle. The K-9 alerted to the presence of narcotics and **NORRIS'** [sic] vehicle was searched. A methamphetamine pipe and black digital scale were located inside the vehicle.
>
> Methamphetamine was discovered inside a hidden compartment underneath the center console. A .40 caliber Taurus 740 slim pistol (Serial Number SIY89377) was located inside **NORRIS'** [sic] duffle bag behind the driver's seat. The duffle bag contained men's clothing and

hygiene products as well. The methamphetamine (actual) weighed approximately 58 grams, which is not a personal, use quantity.

**NORRIS** admits he possessed the methamphetamine with intent to distribute it and that he possessed the firearm in furtherance of the felony drug offense charged in Count One.

(Doc. 14, PageID.51) (emphasis in original).

The District Judge accepted Norris's guilty plea (*see* Doc. 18), and on May 18, 2020, sentenced Norris to a total of 181 months in prison, followed by concurrent terms of supervised release. (Doc. 38). Written judgment was entered on May 28, 2020, and no party directly appealed.

## C. The § 2255 Motion

Norris filed his initial § 2255 motion on June 1, 2021.[2] (Doc. 45). On September 19, 2023, after the Government had already filed its response to the initial § 2255 motion, the Court granted Norris leave to amend his motion, advising him that his "amended § 2255 motion will replace the current motion" and "any claims raised in the original motion but not reproduced in the forthcoming amended motion will be deemed abandoned." (Doc. 64). Norris filed his second motion—the operative motion now before the Court—on October 12, 2023, when he delivered it to prison authorities for mailing. (Doc. 65). Norris also filed an affidavit in support of his amended § 2255 motion. (Doc. 67). The Government filed its response to Norris's amended motion on January 10, 2024 (Doc. 70), and Norris subsequently filed his reply (Doc. 71). Norris's

---

[2] Under the prison mailbox rule, a court filing by a *pro se* inmate is deemed filed on the date it is delivered to prison authorities for mailing. *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014). Norris certified his motion was delivered for mailing on June 1, 2021. (Doc. 45, PageID.162).

operative § 2255 motion is now ripe for this Court's consideration.

The undersigned recognizes and appreciates Norris's efforts to organize his claims as shown on the first two pages of his supporting memorandum. (Doc. 65, PageID.329-330). However, since some of Norris's claims present overlapping legal issues, and since there arguably are unenumerated claims for relief embedded within Norris's enumerated ones, the undersigned has reorganized Norris's claims as follows for more efficient analysis:

**Ground One - Fourth Amendment:** Norris claims he was subjected to an unlawful traffic stop and vehicle search in violation of his Fourth Amendment rights. (Doc. 65, PageID.5, 15-20).

**Ground Two - Factual Sufficiency:** Norris challenges the factual sufficiency of his indictment and convictions. For his 21 U.S.C. § 841(a)(1) conviction, Norris argues he should not have been indicted or convicted for possessing 58 grams of "actual methamphetamine" because the drugs he possessed were not properly weighed or analyzed for purity. (Doc. 65, PageID.322, 330, 336-337, 344). Likewise, Norris contends his 18 U.S.C. § 924(c)(1)(A)(i) indictment and conviction lack a sufficient factual basis because he did not possess a firearm "in furtherance of a drug trafficking crime." (Doc. 65, PageID.322, 330, 339-341).

**Ground Three - Evidentiary Challenges:** Norris contests the validity of the evidence in his case because he says (1) the Department of Homeland Security broke the chain of custody by shipping the evidence using Federal Express and (2) the digital scales used to weigh the drugs seized from his vehicle were faulty. (Doc. 65, PageID.323, 330, 336, 344-345).

**Ground Four - Sentencing Challenges:** Norris objects to the District Judge's reliance at sentencing on the presentence investigation report (PSR) representing that he possessed "actual methamphetamine" versus a "methamphetamine mixture", which Norris says unfairly increased his potential sentence from 63-78 months to 120-151 months. (Doc. 65, PageID. 323, 330, 336-337, 345). Next, Norris argues that the District Judge erred in adopting the PSR's criminal history calculations. (Doc. 65, PageID. 322, 330, 343). Finally, Norris claims the District

Judge erred by not applying a 3-point reduction in his offense level computation that he says the Government agreed to. (Doc. 65, PageID.330, 342).

**<u>Ground Five – Guilty Plea Challenges</u>:** Norris broadly attacks the voluntary and knowing nature of his guilty plea by claiming (1) that he did not understand the meaning of "actual" methamphetamine, as opposed to a methamphetamine "mixture", and the impact of that distinction on his potential sentence, and (2) that he did not understand the essential elements of the 18 U.S.C. § 924(c)(1)(A)(i) charge, which Norris says caused him to plead guilty even though he did not possess his firearm "in furtherance of" a drug trafficking offense. (Doc. 65, PageID.322, 329, 336-339).

**<u>Ground Six – Ineffective Assistance of Counsel</u>:** Norris raises several claims of ineffective assistance of counsel, including that Colvin failed to advise him about a potential Fourth Amendment defense and failed to file a motion to suppress the evidence seized from his vehicle; failed to inform him of the nature of his offenses; allowed him to enter an unknowing and involuntary guilty plea; misinformed him of the elements of 18 U.S.C. 924(c)(1)(A)(i); failed to challenge the quantity and purity of the drug evidence against him; and failed to object when the District Judge did not apply a 3-point reduction in his offense level computation. (Doc. 65, PageID.320, 322, 329-330, 334-335, 336, 338-340, 341-342, 344; Doc. 71, PageID.404).

As explained below, all but one of Norris's claims should be dismissed because they are barred by his guilty plea, procedurally defaulted, and/or fail on the merits, and can be dismissed without an evidentiary hearing.

As noted previously (*see* Doc. 75), the undersigned determined that the following claim warranted an evidentiary hearing: that Colvin rendered ineffective assistance of counsel by failing to advise him about a potential Fourth Amendment defense and failing to file a motion to suppress the evidence seized from his vehicle. Accordingly, the undersigned appointed counsel for Norris and held an evidentiary hearing limited to that claim on August 8, 2024, at which Colvin and Norris testified.

For the reasons explained below, the undersigned finds that Norris is also due no relief on this claim.

## II.    Analysis

### A.    Grounds One through Five are barred by Norris's guilty plea and the binding terms of his plea agreement.

Grounds One through Five of Norris's operative § 2255 motion are barred by his guilty plea and the binding terms of his written plea agreement. To explain, once a guilty plea becomes final, a subsequently filed § 2255 motion like Norris's "is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). Here, Norris's guilty plea was knowing and voluntary, and his efforts to invalidate that plea fail.

"The foundational principles governing guilty plea procedures derive from constitutional notions of due process. Because a guilty plea involves the relinquishment of several constitutional rights and privileges, it must be entered voluntarily and knowingly." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018) (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)). "Building on these fundamental constitutional principles, Rule 11(b) [of the Federal Rules of Criminal Procedure] sets out procedures that district courts must follow when accepting guilty pleas." *Id*. at 1238. Rule 11 is designed to address the "three core objectives" for a knowing and voluntary plea: (1) that the plea

is free from coercion; (2) that the defendant understands the charges against him; and (3) that the defendant understands the consequences of his guilty plea. *Id*.

The "three core objectives" for a knowing and voluntary plea were met in Norris's case. At Norris's plea hearing, Norris told the District Judge that he had received a copy of the indictment, that he had a full opportunity to read it and review it with his attorney, Colvin, and that he fully understood the charges contained in the indictment. (Doc. 47, PageID.175-176). Norris also said he had fully discussed with Colvin the facts surrounding his charges and that he was fully satisfied with the representation he received from Colvin. (Doc. 47, PageID.176). Norris admitted signing the plea agreement and the factual resume and said he fully understood the terms and conditions of those documents. (Doc. 47, PageID.176-177). Norris assured the District Judge that no one had forced him, threatened him, or otherwise pressured him to plead guilty, and that no promises had been made to him in exchange for the plea agreement. (Doc. 47, PageID.177). There is a strong presumption that Norris's statements at the plea colloquy are true, and Norris has not overcome that presumption. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 799-800 (11th Cir. 1987)). Through this colloquy, the District Judge ensured that the first two "core objectives" of a knowing and voluntary plea were satisfied; Norris understood the charges against him, and his plea was free from coercion.

The District Judge also made sure Norris understood the consequences of pleading guilty, thereby satisfying the third "core objective" of a knowing and

voluntary plea. The District Judge gave Norris detailed information about the penalties he faced for pleading guilty, including the range of potential terms of imprisonment, fines, supervised release, special assessments, and the potential for restitution, making clear that the sentence imposed could be different from any estimate given to Norris by Attorney Colvin or anyone else. (Doc. 47, PageID.177-178, 179). Norris said he understood. (Doc. 47, PageID.178-79). The District Judge also told Norris he could lose certain rights by pleading guilty, and Norris again said he understood. (Doc. 47, PageID.178). After the colloquy with Norris, the District Judge determined that Norris was "fully competent and capable of entering an informed plea", that he was "aware of the nature of the charge and the consequences of [his] plea" and that the plea was "knowing and voluntary." (Doc. 47, PageID.183). Norris never voiced any objection during the plea colloquy.

These facts establish that Norris's guilty plea was knowing and voluntary because all three "core objectives" were met. The District Judge confirmed Norris had not been coerced, that he understood the charges against him, and that he understood the consequences of his guilty plea. *See Presendieu*, 880 F.3d at 1238.

Having established that Norris's guilty plea itself was knowing and voluntary, the undersigned looks then to the binding terms of his plea agreement with the Government and the impact of those terms on his § 2255 claims. "A plea agreement is, in essence, a contract between the Government and a criminal defendant . . . And because it functions as a contract, a plea agreement should be interpreted in accord with what the parties intended." *Rudolph v. United States*, 92 F.4th 1038, 1043 (11th

Cir. 2024) (quoting *King v. United States*, 41 F. 4th 1363, 1367 (11th Cir. 2022); *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005)). A key provision of Norris's plea agreement stipulated that he was waiving his right to collaterally attack his guilty plea, conviction, or sentence, including by filing any motion under 28 U.S.C. § 2255. (Doc. 14, PageID.46). This provision is enforceable so long as it was knowing and voluntary. *See King*, 41 F.4th at 1367 (considering enforceability of waiver and recognizing "waivers, made knowingly and voluntarily, are enforceable"). In turn, a waiver is "knowing and voluntary" if (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record makes it manifestly clear that the defendant otherwise understood the full significance of the waiver. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005).

Norris's collateral attack waiver was knowing and voluntary. Norris's plea agreement explicitly acknowledged that, by signing the plea agreement and pleading guilty, Norris waived his right to collaterally attack his convictions and sentences, except under very specific and limited circumstances. More specifically, paragraph 25 of the plea agreement stipulated in pertinent part as follows:

> As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.
>
> a.   EXCEPTIONS. The defendant reserves the right to timely file a direct appeal challenging:

> (1)   any sentence imposed in excess of the statutory
>         maximum;
> (2)   any sentence which constitutes an upward departure
>         or variance from the advisory guideline range.
>
> The defendant also reserves the right to claim ineffective
> assistance of counsel in a direct appeal or § 2255 motion.

(Doc. 14, PageID.46-47). Norris signed the plea agreement below the following

unnumbered paragraph:

> I have consulted with my counsel and fully understand all my rights
> with respect to the offense charged in the Indictment pending against
> me. I have read this Plea Agreement and carefully reviewed every part
> of it with my attorney. I understand this agreement, and I voluntarily
> agree to it. I hereby stipulate that the Factual Resume, incorporated
> here, is true and accurate in every respect, and that had the matter
> proceeded to trial, the United States could have proved the same beyond
> a reasonable doubt.

(*Id.*, PageID.48).

In addition to adopting the clear waivers set forth in the plea agreement,

Norris also told the District Judge he understood the collateral attack waiver during

the plea colloquy conducted in open court:

> THE COURT: You also have the right to waive your right to appeal. And
> when I reviewed your plea agreement, I noticed that you are waiving
> your right to appeal your conviction and sentence either by filing a direct
> appeal or a collateral appeal with the following limited exceptions: Any
> punishment in excess of the statutory maximum; any punishment
> constituting an upward departure of the guideline range; and any claim
> of ineffective assistance of counsel.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Doc. 47, PageID.179-80).

Taking the express terms of the plea agreement together with the unambiguous colloquy between Norris and the District Judge, the undersigned finds that Norris knowingly and voluntary waived his right to collaterally attack his convictions and sentences. Accordingly, Ground One (Fourth Amendment Claim), Ground Two (Sufficiency Claims), Ground Three (Evidentiary Claims), and Ground Four (Sentencing Claims) are barred by Norris's knowing and voluntary guilty plea and his binding plea agreement.

Norris tries to avoid the effect of his collateral attack waiver by asserting the two broad Guilty Plea Challenges in Ground Five. Specifically, Norris claims his plea was *not* knowing and voluntary because (1) he did not understand the distinction between "actual" methamphetamine versus a "methamphetamine mixture", and the impact of that distinction on his potential sentence, and (2) he did not understand the essential elements of the 18 U.S.C. § 924(c)(1)(A)(i) charge, particularly the requirement that he possessed his firearm "in furtherance of" a drug trafficking offense. (Doc. 65, PageID.322, 329, 336-339). Both of these arguments essentially question whether Norris understood the charges against him—the second "core objective" of a knowing and voluntary plea. *Presendieu*, 880 F.3d at 1238. Norris's arguments are unpersuasive.

As already explained, Rule 11(b) requires courts to assure that defendants are informed of and understand "the nature of each charge" against them. *Id*. at 1238. There is not a rigid rule for how a district court must instruct a defendant about the charges against him, and Rule 11 does not even require that the elements of an

offense be listed. *Id*. In straightforward cases, a Rule 11 colloquy can be adequate simply by the district court reading the indictment and giving the defendant an opportunity to ask questions. *Id*. Factual proffers offered during a plea colloquy are also relevant to whether a defendant was adequately advised of the nature of the charges against him. *Id*. at 1239 (citing *United States v. Wiggins*, 131 F.3d 1440, 1442 (11th Cir. 1997) (per curiam)). Applying this standard, the undersigned cannot agree with Norris that he lacked understanding of the charges against him.

First, although Norris argues he thought he was being charged with "actual possession" of methamphetamine versus possession of "actual methamphetamine", the record demonstrates otherwise. When asked, Norris clearly told the District Judge that he understood the charges against him. (Doc. 47, PageID.76). Norris admitted he had been furnished with the factual resume summarizing the Government's evidence and that he agreed with it, and the resume included a clear statement that "methamphetamine (actual)" had been seized from his vehicle. (*Id*., PageID.176-177; Doc. 14, PageID.51). During the plea colloquy, the District Judge read Norris the elements of both counts in his indictment, and he had the Government summarize the factual resume for Norris. (Doc. 47, PageID.181-83). During that summary, the Government specifically said, "[t]he methamphetamine, **which was actually ice**, weighed approximately 58 grams." (*Id*., PageID.182 (emphasis added)). Norris admitted he committed the acts alleged in the factual resume. (*Id*., PageID.183). Throughout his direct interaction with the District Judge, Norris never questioned the charges against him or raised any issue with the

evidentiary support the Government offered. The factual resume—which, again, Norris admitted was accurate—referenced "actual" methamphetamine more than once, and no reasonable reading of the factual resume or the plea hearing transcript supports Norris's claim that he thought he was being charged with "actual possession" versus possession of "actual methamphetamine". Norris's *post hoc* claims that he did not understand the charges against him are insufficient to invalidate his knowing and voluntary guilty plea to his drug charge.

Norris's claim that he did not understand the gun charge fails for the same reason—the record demonstrates that Norris *did* understand the elements of 18 U.S.C. § 924(c)(1)(A)(i), despite what he now claims. Again, Norris told the District Judge that he understood the charges against him, admitted that he had been furnished with the factual resume, and admitted he committed the conduct described in the factual resume, including that "he possessed the firearm in furtherance of the felony drug offense charged in Count One." (*Id.*, PageID.176-177; Doc. 14, PageID.51). The District Judge read Norris the elements of his gun charge during the plea hearing and had the Government separately summarize the factual resume for Norris. (Doc. 47, PageID.181-183). Norris never questioned the charges or challenged the Government's factual allegations. (*Id.*, PageID.183). Again, Norris's newly alleged lack of understanding is insufficient to invalidate his knowing and voluntary guilty plea.

To the extent Norris's pleadings can be read to say he did not understand the potential penalties he faced for pleading guilty, those allegations are equally

unpersuasive. The District Judge articulated to Norris the penalties he faced for pleading guilty, including the maximum terms of imprisonment, fines, supervised release, special assessments, and the potential for restitution, making clear that the sentence imposed could be different from any estimate given to Norris by Colvin or anyone else. (*Id.*, PageID.178-180). Norris said he understood. (*Id.*, PageID.178-179). The District Judge told Norris that he would consider applicable sentencing guidelines, that he could not determine an appropriate sentence until a presentence report was completed. (*Id.*). Norris said he understood. (*Id.*, PageID.179). The District Judge told Norris he could impose a sentence that was more or less severe than the sentence called for in the guidelines, and that Norris *would still be bound by the plea*, and Norris again said he understood. (*Id.*) Norris was told "the time to make that decision is now" and Norris indicated he understood and still proceeded to plead guilty. (*Id.*) These facts show that Norris fully understood the consequences of pleading guilty, including that he could receive a higher sentence than what he expected. For these reasons, Norris's Guilty Plea Challenges set forth in Ground Five are barred by his guilty plea because it was knowing and voluntary.

To conclude on this point, Norris does not dispute that he pleaded guilty and that he executed a binding plea agreement that included a collateral attack waiver. Norris has not alleged any facts that warrant invalidating that plea or the waiver. As a result, Grounds One through Five of Norris's § 2255 motion are barred, leaving only the Ineffective Assistance of Counsel Claims in Ground Six, claims that were expressly exempted from Norris's collateral attack waiver. (Doc. 14, PageID.46-47).

**B.** **Alternatively, Grounds One through Five are procedurally
defaulted because Norris did not pursue them on direct appeal.**

Before turning to the Ineffective Assistance of Counsel Claims in Ground Six,
the undersigned addresses an alternative basis for dismissing Grounds One through
Five—they are all procedurally defaulted because Norris did not file a direct appeal.
To explain, defendants generally must advance challenges to their convictions or
sentences on direct appeal, or else they are barred from presenting those challenges
in a § 2255 proceeding. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)
(citations omitted). This rule generally applies to all claims, including constitutional
claims. *Id.* Said differently, failure to raise available claims on direct appeal results
in procedural default of those claims. *Id.*

Once a defendant has procedurally defaulted his constitutional claims by not
raising them on direct appeal, those claims are barred in a subsequent § 2255
proceeding unless the defendant qualifies for one of two narrow exceptions. First, a
defendant can show "cause for not raising the claim of error on direct appeal and
actual prejudice from the alleged error." *Id.* (citations omitted). Alternatively, "a court
may allow a defendant to proceed with a § 2255 motion despite his failure to show
cause for procedural default if a constitutional violation has probably resulted in the
conviction of one who is actually innocent." *Id.* (citations and quotations omitted).
Norris does not qualify for either exception.

Cause-and-Prejudice

First, Norris does not qualify for the "cause-and-prejudice" exception to
procedural default. The cause-and-prejudice standard requires "showing cause for not

raising the claim of error on direct appeal and actual prejudice from the alleged error." *United States v. Bane*, 948 F.3d 1290, 1296 (11th Cir. 2020). "Cause" for a procedural default exists when the default results from some objective factor external to the movant that cannot be fairly attributable to his own conduct. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). To show "prejudice", a movant must show that the alleged errors created more than a "possibility of prejudice" but instead "that they worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). It is not necessary to analyze cause if a movant cannot establish actual prejudice. *Id.* at 168.

Norris does not directly acknowledge the Government's procedural default argument, nor does he explain why he failed to file a direct appeal or how he qualifies for the cause-and-prejudice exception. (Doc. 71). However, construing Norris's filings liberally, it appears Norris offers a single, conclusory excuse for his failure to file a direct appeal: he says he was "unable to communicate with counsel due to COVID 19." (Doc. 65, PageID.5, 7-8, 10). In the undersigned's view, this is insufficient to establish cause. While the COVID-19 pandemic certainly was unprecedented and impactful, it does not automatically explain away Norris's failure to file a direct appeal. *See Cruz-Rivera v. United States*, Civil No. 22-1170 (FAB), 2023 WL 6294203 (D. Puerto Rico Sept. 27, 2023) (discussing cases where COVID-19 impacts did not by themselves justify equitable tolling of statute of limitations). Norris does not say what efforts he made to communicate with his attorney, or whether he made any other

efforts to advance his claims on direct appeal. Norris never alleges his counsel was ineffective in relation to seeking a direct appeal. Norris's unsupported claim that the pandemic impeded his communication with counsel does not satisfy the cause-and-prejudice standard. Furthermore, under the facts of Norris's case, he would be unable to establish "cause"—a factor external to the defense and not fairly attributable to his own conduct—for failing to file a direct appeal, or actual prejudice. Norris would have been unable to file a direct appeal because of his own conduct; he agreed to a direct appeal waiver in his plea agreement. *See Ware v. United States*, No. 09-60185-CIV, 2009 WL 2567023, at *8 (S.D. Fla. May 14, 2009) (discussing cases holding that waivers of appeal rights in plea agreements does not constitute adequate cause for failing to seek direct appeal). Because Norris has not sufficiently alleged facts showing that he had cause for his procedural default, or that he was prejudiced by the error, the undersigned recommends denying Norris the benefit of the cause-and-prejudice exception.

<u>Actual Innocence</u>

Norris is also ineligible for the "actual innocence" exception to procedural default. The "actual innocence" exception means exactly what it says. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (explaining "movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself."). "To establish actual innocence, the petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Fordham*

*v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998)).

Norris contends he is actually innocent of violating 18 U.S.C. § 924(c)(1)(a)(i). (Doc. 65, PageID.339).[3] However, given the undisputed facts in this case, the undersigned cannot agree that no reasonable juror would have convicted Norris of that crime.

For starters, Norris does not seem to contest the first element of his § 924(c) charge, *i.e.* that he possessed a firearm. Norris even admits he was guilty under another statute—18 U.S.C. § 922(g)—because he "was a convicted felon and was in possession of a firearm . . ." (Doc. 71, PageID.404). Instead, Norris argues the Government could not prove he possessed that firearm "in furtherance of" a drug trafficking crime. (Doc. 65, PageID.340). Norris's argument fails under Eleventh Circuit precedent.

The Eleventh Circuit has instructed that a conviction for possessing a firearm "in furtherance of" a drug trafficking crime "requires the prosecution to establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). As Norris correctly argues, the mere presence of a gun is insufficient to sustain a conviction. *Id.* at 1253. Rather, the factfinder must consider several other factors including:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded,

---

[3] Norris does not assert actual innocence for his 21 U.S.C. § 841(a)(1) conviction.

proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.*

Applying these factors, reasonable jurors could find that Norris was guilty of violating § 924(c). Norris's case involved drug trafficking, an unquestionably dangerous crime. Officers found Norris's firearm during a late-night traffic stop where they seized a large quantity of methamphetamine, drug paraphernalia, and the subject weapon. Norris acknowledges the firearm was concealed in a duffel bag on the rear floorboard, behind the driver's seat, which presumably was not far from where officers found Norris's methamphetamine "inside a hidden compartment underneath the center console." (Doc. 65, PageID.51, 340). The factual resume appended to Norris's plea agreement, which Norris agreed was true and correct, similarly described how officers discovered Norris's drugs, a methamphetamine pipe, a digital scale, and his firearm, all in the same general area of his car. (Doc. 14, PageID.51). Even more damning, Norris admitted in the plea agreement and at the plea hearing that he possessed the methamphetamine with intent to distribute it and that he possessed the firearm in furtherance of that felony drug offense. (*Id.*) These facts disqualify Norris from the "actual innocence" exception to procedural default.

To summarize, Grounds One through Five of Norris's § 2255 motion are all procedurally defaulted because he did not file a direct appeal, and he does not qualify for either exception to save his claims. Norris's only claims that escape this procedural bar are his claims for ineffective assistance of counsel, which are addressed separately below. *See Massaro v. United States*, 538 U.S. 500, 504, 123 S.

Ct. 1690, 155 L. Ed. 2d 714 (2003) (claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to a procedural bar for failing to raise them on direct appeal).[4]

### C.   Norris's Ineffective Assistance of Counsel Claims in Ground Six do not warrant relief.

Having established that Grounds One through Five are both barred by Norris's guilty plea and procedurally defaulted, the undersigned turns to Norris's only remaining claims, his Ineffective Assistance of Counsel Claims in Ground Six. Specifically, Norris says Colvin (1) failed to advise him of a Fourth Amendment defense and failed to file a motion to suppress the evidence seized from his vehicle; (2) failed to inform him of the nature of his offenses; (3) allowed him to enter an unknowing and involuntary guilty plea; (4) misinformed him of the elements of 18 U.S.C. 924(c)(1)(A)(i); (5) failed to challenge the quantity and purity of the drug evidence against him; and (6) failed to object when the district court did not apply a

---

[4] The Government also argues that many of Norris's claims are time-barred because they were filed in his amended § 2255 motion *after* the applicable one-year statute of limitations expired and they do not arise out of the same operative facts as the claims in his original, timely § 2255 motion. (Doc. 70, PageID.385-90). The undersigned hesitates to read Norris's amended petition so strictly, especially in light of his *pro se* status. Like he did in his original petition, Norris takes issue with the search and seizure in his case, the purity and weight of the drugs seized from his vehicle, the way his evidence was handled, the "erroneous information" he received from his attorney "to intimidate [him] to sign a guilty plea", the method for calculating his sentence, and his attorney's general ineffectiveness during pre-plea negotiations and sentencing. (Doc. 45). Again, considering Norris's *pro se* status, the claims in Norris's amended § 2255 motion appear sufficiently "tied to a common core of operative facts" to support relation back to his initial motion. *See Mayle v. Felix*, 545 U.S. 644, 664, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). Regardless, given the other grounds for dismissing Norris's claims, it is not necessary to extensively analyze this issue.

3-point reduction in his offense level computation. (Doc. 65, PageID.320, 322, 329-330, 334-336, 338-342, 344; Doc. 71, PageID.404).

'The "familiar two-pronged test" of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to Norris's claim that Colvin provided ineffective assistance in connection with his plea. *See Harding v. United States*, Case No. 21-14133, 2024 WL 490839 at *5 (11th Cir. Feb. 8, 2024) (per curiam) (unpublished) (citing *Riolo v. United States*, 38 F.4th 956, 967 (11th Cir. 2022)). Under *Strickland*, Norris has to show <u>both</u> that: (1) his attorney's performance was deficient <u>and</u> (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687-88, 694. Norris bears the burden of proving he is entitled to relief. *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017).

As to the first prong—deficiency—Norris must show that Colvin's representation in the guilty plea context fell below an objective standard of reasonableness. *Riolo*, 38 F.4th at 967. For the second prong—prejudice—Norris must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 364-65, 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)). The Supreme Court has instructed that guilty pleas should not be upset "solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 369. Instead, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

In other words, Norris has to offer more than his own "after-the-fact assertion" to show he would have rejected a plea deal if Colvin had taken the actions he complains about now. *See Harding*, 2024 WL 490839 at *5 (citing *United States v. Smith*, 983 F.3d 1213, 1222 (11th Cir. 2020); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)).

### 1. Subclaims (2)-(5) can be dismissed without an evidentiary hearing

Subclaims (2), (3), (4), (5), and (6) of Ground Six can be summarily rejected. First, any of Norris's ineffective assistance claims that do not affect the validity of his guilty plea or his collateral attack waiver are barred. *See Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) ("An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (by pleading guilty a defendant waives ineffective assistance of counsel claims related to "pre-plea issues" that do not impact his decision to plead guilty). This distinctly bars subclaim (5) (relating to counsel's alleged failure to challenge the quantity and purity of Norris's drugs) and subclaim (6) (alleging counsel failed to challenge the district court's offense level computation). Norris does not claim either of those issues influenced his decision to plead guilty.

Subclaim (2), which broadly attacks the sufficiency of the information Colvin gave Norris about the "nature of [his] offenses", fails for the same reason—there is no apparent relation to Norris's decision to plead guilty. Norris roughly claims Colvin

failed to tell him the full nature of his charges, but he never says exactly what additional information he needed or how more information would have changed his decision to plead guilty. And, in any event, Norris was not prejudiced by any incomplete advice about the charges against him because the full nature of his charges was made clear to Norris by the written terms of his plea agreement and the District Judge's extensive instructions during the plea hearing. *See United States v. Wilson*, 245 F. App'x 10, 11 (11th Cir. 2007) (per curiam) (unpublished) (counsel's deficient advice about sentencing implications of a guilty plea were cured by the district court's instructions); *Kealy v. United States*, 722 F. App'x 938, 946 (11th Cir. 2018) (per curiam) (unpublished) (a defendant's misunderstanding about the impact of her plea agreement was cured by the unambiguous plea agreement and plea colloquy).

Subclaims (3) and (4) lack merit. First, as already analyzed above, Norris's guilty plea *was* knowing and voluntary, and his claim in subsection (3) that Colvin was ineffective for "allowing [him] to enter" an unknowing and involuntary guilty plea necessarily fails. (Doc. 65, PageID.322). Norris's claim in subsection (4) that Colvin wrongly let him plead guilty to violating § 924(c) similarly fails because, again as explained above, Norris's conduct was sufficient to support his guilty plea. Norris cannot prove deficient performance or prejudice as required by *Strickland*.

### 2. Following an evidentiary hearing, Norris fails to show unconstitutionally ineffective assistance with regard to Subclaim (1).

That leaves subclaim (1), which in the undersigned's view is the only ineffective assistance claim potentially impacting the knowing and voluntary nature of Norris's

guilty plea. In subclaim (1), Norris claims that Colvin was constitutionally ineffective for failing to advise him about a potential Fourth Amendment defense and failing to file a motion to suppress the evidence seized from his truck during what Norris says was an illegal traffic stop. Norris specifically alleges he would not have pled guilty if Colvin had effectively represented him on this issue. (Doc. 65, PageID.335).

"In cases like this one, where a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress. This is because a lawyer's performance only falls outside the range of competence demanded of counsel if she did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial."[5] *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015). *See also Lee v. United States*, 582 U.S. 357, 365, 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017) ("[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error—for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession[—]" "a defendant must…show that he would have been better off going to trial" in order to show prejudice under *Strickland* and *Hill*.); *Spriggs v. United States*, 703 F. App'x 888, 891 (11th Cir. 2017) (per curiam) (unpublished) ("[A] district court's inquiry into trial counsel's performance in advising a client to plead guilty cannot be

---

[5] There appears to be no dispute that suppression of the evidence seized from Norris's truck would have been dispositive of the charges against him.

unmoored from the merits of an alleged Fourth Amendment violation, particularly when, as here, the defendant claims he is innocent of the offense he pled guilty to and when a motion to suppress may have been outcome-determinative.").“[T]he relevant question under *Strickland*” is whether “no competent attorney would think a motion to suppress would have failed…” *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011). Thus, this analysis begins with the legal standard applicable to Norris’s claim.

The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV. If law enforcement obtains evidence in violation of the Fourth Amendment, that evidence must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 654-55, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Norris’s operative § 2255 motion first takes issue with his initial traffic stop, arguing that “the traffic stop was pretextual and [Officer Childress] appeared to have had a predetermined plan for Norris prior to initiating the traffic stop.” (Doc. 65, PageID.333). The Government says the initial traffic stop was lawful. (Doc. 70, PageID.395). The Government has the better argument. Although Norris alleges facts that strongly suggest law enforcement had other motives for pulling him over, the Supreme Court has rejected the “argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved[,]” and has made clear that “[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.” *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d

89 (1996). *Accord United States v. Lewis*, 674 F.3d 1298, 1304 n.3 (11th Cir. 2012).

Moreover, there is little dispute that Norris was speeding, albeit only by a few miles

per hour, and even minor traffic violations support a traffic stop. *United States v.*

*Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc) (citing *United States v.*

*Chanthasouxat*, 342 F.3d 1271, 1277 (11th Cir. 2003); *Holeman v. City of New*

*London*, 425 F.3d 184, 189–90 (2d Cir. 2005)). The initial traffic stop would not have

supported a motion to suppress.

Norris also claims that the police unlawfully extended the duration of the

traffic stop to allow for a drug-sniffing dog to be brought to the scene. (Doc. 65,

PageID.333-334). After sniffing around the outside of Norris's truck, the dog

eventually alerted the officers to the presence of contraband. The officers then

searched the truck, discovering the drugs and firearm that were the basis for the

charges to which Norris pleaded guilty.[6]

> The Fourth Amendment imposes limits on the permissible duration of
> traffic stops. Police executing a traffic stop "do not have unfettered
> authority to detain a person indefinitely," *Campbell*, 26 F.4th at 881,
> and "[a] police stop exceeding the time needed to handle the matter for
> which the stop was made violates the Constitution's shield against
> unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350,
> 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). That is, under the Fourth
> Amendment, a traffic stop "become[s] unlawful if it is prolonged beyond
> the time reasonably required to complete [its] mission." *Illinois v.*
> *Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).
>
> In *Rodriguez*—the Supreme Court's key precedent on traffic stop
> duration—the Court stated that a stop's legitimate mission has two
> components: (1) "address[ing] the traffic violation" and (2) "attend[ing]

---

[6] Norris also claims in his operative § 2255 motion that the officers searched the
interior of his truck prior to the arrival of the dog, but a review of the video from
Officer Childress's dashboard camera refutes this assertion.

to related safety concerns." 575 U.S. at 354, 135 S. Ct. 1609. The latter category—"related safety concerns"—includes a traditional set of "ordinary inquiries incident to the traffic stop": *i.e.*, "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 355, 135 S. Ct. 1609 (quotation omitted and alteration adopted). These checks are part of the stop's mission because they "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*.

By contrast, there are other activities that are not part of a traffic stop's legitimate mission. In particular, an "unrelated criminal investigation" that lacks "the reasonable suspicion ordinarily demanded to justify detaining an individual"—such as a dog sniff conducted without a particularized basis to suspect illicit drug activity—is beyond the traffic stop's mission. *Id*. at 355–57, 135 S. Ct. 1609; *see also id*. at 356, 135 S. Ct. 1609 (noting that "a dog sniff is not fairly characterized as part of [an] officer's traffic mission"). To be clear, an officer is free to undertake activities unrelated to the traffic stop's mission during the stop's already-permissible duration. *See id*. at 354, 135 S. Ct. 1609 (noting that "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention"). But the officer "may not ... prolong the stop." *Id*. at 355, 135 S. Ct. 1609.

The permissible length of a traffic stop is the time "reasonably required" to complete its core tasks. *Id*. at 354–55, 135 S. Ct. 1609. "Authority for the seizure thus ends when [the] tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*. at 354, 135 S. Ct. 1609. Unrelated "detours" that extend the stop beyond that point violate the Fourth Amendment. *Id*. at 356–57, 135 S. Ct. 1609.

*Baxter v. Roberts*, 54 F.4th 1241, 1259 (11th Cir. 2022).

The Eleventh Circuit has described "reasonable suspicion" as follows:

An officer can detain a motorist for a brief investigation when the officer has a "reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). Reasonable suspicion is a less demanding standard than probable cause and requires only a "minimal level of objective justification." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004). Nevertheless, "[t]he

reasonable suspicion must be more than an inchoate and unparticularized suspicion or hunch." *Powell*, 222 F.3d at 917 (quotation marks omitted).

In making reasonable-suspicion determinations, we "must look at the totality of the circumstances ... to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L.Ed.2d 740 (2002) (quotation marks omitted)…

When we view the totality of the circumstances, we cannot simply disregard factors that may have an innocent explanation. *Arvizu*, 534 U.S. at 274–75, 122 S. Ct. 744. Reasonable suspicion may exist even if each fact alone is susceptible of innocent explanation. *United States v. Bautista-Silva*, 567 F.3d 1266, 1272 (11th Cir. 2009). After all, reasonable-suspicion analysis is not concerned with hard certainties but with probabilities, and officers may rely on inferences and deductions "that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). In this way, the Fourth Amendment "accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S. Ct. 673, 145 L.Ed.2d 570 (2000).

*United States v. Byron*, 817 F. App'x 753, 757 (11th Cir. 2020) (per curiam) (unpublished).

The following were introduced into evidence at the evidentiary hearing: video of the traffic stop and subsequent vehicle search taken from both the dashboard camera and bodycam of Officer C. Childress, who initiated the traffic stop and ultimately arrested Norris, as well as Officer Childress's report of the incident. Having reviewed those, the undersigned finds that competent attorneys could reasonably disagree on whether a motion to suppress challenging the length of the traffic stop was likely to succeed. As such, Norris has not shown that "no competent

attorney would think a motion to suppress would have failed[,]" *Premo*, 562 U.S. at 124, and thus has not shown that Colvin was ineffective under *Strickland*.

As grounds for "reasonable suspicion" justifying extending the traffic stop to allow for arrival of the drug-sniffing dog, Officer Childress relied on the following:

- Norris engaged in what Officer Childress described as suspicious and evasive behavior prior to the traffic stop. Officer Childress first began following Norris's truck after noticing that the truck had its high beams on, which Officer Childress was concerned could blind other drivers. After Childress started following the truck, it "abruptly" changed lanes and turn into a gas station. From a neighboring parking lot, Officer Childress observed Norris enter then leave the gas station convenience store in the span of about 3 minutes and then continue driving. As Childress resumed following, he noted that Norris was "traveling…at what appeared to be a high rate of speed" as Childress tried to catch up. When Childress activated his signal for Norris to pull over, the truck did not immediately stop and "passed up opportunities to pull of the highway at safe locations to avoid traffic[,]" which Childress found "suspicious as it possibly bought time for the occupants of the vehicle [to] hide contraband or weapons."

- Officer Childress observed that Norris appeared to act nervous, particularly through shaky hands, as he asked Norris for his license and registration.

- Officer Childress recognized Norris from an incident occurring a month before traffic stop, in which the owner of a residence Norris had been renting discovered drug paraphernalia during Norris's eviction.

"[S]ome level of nervousness is to be expected from a motorist as a result of 'being momentarily detained by an authority figure with police power over him,' " *Byron*, 817 F. App'x at 758 (quoting *Perkins*, 348 F.3d at 970). Nevertheless, "nervousness is 'a pertinent factor in determining reasonable suspicion,' " *id.* (quoting *Wardlow*, 528 U.S. at 126). The Eleventh Circuit has also "recognized that 'reluctance to stop' may contribute to the formation of an objectively reasonable suspicion of illegal activity." *Id.* at 759 (quoting *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999)). Additionally, "past illegal drug activity [is] relevant in determining reasonable suspicion…" *United States v. Winters*, 491 F.3d 918, 922 (8th Cir. 2007) (citing *United States v. Cornelius*, 391 F.3d 965, 967 (8th Cir. 2004)). Viewing the above evidence as a whole—never mind any additional factors that may have been introduced at a suppression hearing—a competent attorney could reasonably conclude that a court would likely find those circumstances constituted reasonable suspicion to extend the stop, and that a motion to suppress on that basis was likely to be denied. As the undersigned has already noted, other competent attorneys could also reasonably conclude that there was a chance, even a good one, that a court would not find that the foregoing, without more, justified reasonable suspicion. However, "reasonable suspicion" is both a low bar to meet, and an open-ended inquiry heavily dependent upon the facts and circumstances of a particular case. The Sixth

Amendment does not require counsel to pursue any motion to suppress when there is some probability it will be granted. Rather, counsel is only constitutionally required to file a motion to suppress when "no competent attorney would think [the] motion to suppress would have failed…" *Premo*, 562 U.S. at 124. Norris has not provided, nor has the undersigned located, any binding authority holding that the foregoing circumstances cannot justify reasonable suspicion as a matter of law. Accordingly, Colvin was not ineffective for failing to file a motion to suppress the evidence seized from the traffic stop.[7]

For all the above reasons, Norris's operative § 2255 motion (Doc. 65) is due to be **DENIED** and **DISMISSED with prejudice**.

---

[7] At the evidentiary hearing, Colvin, who has been employed as a federal public defender in this district for 19 years, credibly testified that she did not believe the law was on Norris's side regarding a motion to suppress in light of the facts of the case, particularly Norris's actions observed by Officer Childress prior to the stop, and Colvin's view that it did not take a long time for the drug-sniffing dog to arrive on the scene. She also credibly testified to other considerations justifying her decision to forego a motion to suppress. From her experience, Colvin knew that the prosecuting assistant U.S. attorney would routinely argue against defendants receiving credit for acceptance of responsibility at sentencing if they forced the Government to prepare for a suppression hearing. Colvin also testified that pursuing a motion to suppress could jeopardize Norris's ability to provide cooperation with the Government in exchange for a lighter sentence, which was part of the plea agreement and a prosect in which Norris had expressed interest. These circumstances further bolster the reasonableness of Colvin's decision not to file a motion to suppress. *Cf. Premo*, 562 U.S. at 126 ("In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.").

### D.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing Section 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). Where relief is denied on procedural grounds, "a COA should issue [only] when the prisoner shows…that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at

484. In all cases, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337.

Upon due consideration, the undersigned finds that Norris should be **GRANTED** a Certificate of Appealability as to his claim that Colvin was constitutionally ineffective for failing to file a motion to suppress challenging the length of the traffic stop. Norris has made a substantial showing of the denial of a constitutional right on this claim, as jurists of reason would find it debatable whether the Court was correct in dismissing that claim on the merits. However, Norris should be **DENIED** a Certificate of Appealability as to all other grounds for relief, as jurists of reason would not find it debatable whether the Court is correct in dismissing those grounds for the reasons stated above.[8]

---

[8]    Rule 11(a) of the Rules Governing Section 2255 Proceedings further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation regarding the issuance of a certificate of appealability, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation, *see infra*.

Should the Court ultimately deny a certificate of appealability as to some or all grounds for relief, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

### III.    Conclusion

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Norris's operative § 2255 motion (Doc. 65) be **DENIED** and **DISMISSED with prejudice**, and that judgment be accordingly set out by separate document under Federal Rule of Civil Procedure 58.[9] The undersigned further **RECOMMENDS** that Norris be **GRANTED** a Certificate of Appealability on the following issue only: Whether his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to pursue a motion to suppress the evidence seized from Norris's truck on September 16, 2019, on the basis that the officers did not have reasonable suspicion to prolong the traffic stop to allow for the arrival of a drug-sniffing dog.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Cases in the United States District Courts; S.D. Ala.

---

[9] *See* Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The Federal Rules of Civil Procedure…, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules."); *Sassoon v. United States*, 549 F.2d 983 (5th Cir. 1977) (applying Rule 58's separate-document requirement in a § 2255 proceeding); United States v. Hassebrock, 21 F.4th 494, 497 (7th Cir. 2021) (in holding that Rule 58 applied to *coram nobis* proceedings, noting that "[m]any [other] circuits have applied Rule 58 to § 2255 motions").

GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the **5th** day of **September 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**